IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Mohamed Mahmood Muthana, *et al.*, <br><br> Plaintiffs, <br><br> Alejandro Mayorkas, Secretary of Homeland Security, *et al.*, <br><br> Defendants. | Case No. 22-cv-02200 <br><br> Hon. LaShonda A. Hunt |

## MEMORANDUM OPINION AND ORDER

Plaintiffs are Yemeni and Yemini-American individuals who allege that various government agencies and officials deprived them of due process under the Fifth Amendment and violated the Administrative Procedure Act (APA) by conditioning approval of their petitions for immigration visas for alien relatives on DNA testing, and in this case, sending notice regarding denial of the petition to the wrong name and address. Plaintiffs seek declaratory and injunctive relief aimed at reopening the petition, which they recently discovered had been denied over 20 years ago. Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the basis that Plaintiffs' complaint is barred by the statute of limitations and fails to state a claim under the Due Process Clause of the Fifth Amendment. For the reasons set forth below, the motion [13] is denied.

## BACKGROUND

Plaintiff Mohamed Mahmood Muthana, a Yemeni national, became a naturalized United States Citizen in July 2001. (1st Am. Compl. ("FAC") ¶¶ 9, 54, 79, Dkt. No. 12). In early 2002,[1]

---

[1] Plaintiffs explain that "[t]he 2002 I-130 Petition indicates a fee stamp date and a signature date of February 11, 2012. However, the case ID number ("SAA2002042037"), issuing agency (INS), and other form indicators suggest the 2012 date is a clerical error, and that the form was filed in 2002." (FAC ¶ 104 n. 1 (internal citations omitted)). Defendants do not contest this explanation, so neither will the Court.

1

Mohamed filed a petition for alien relative (form I-130) directly at the United States Embassy in Sana'a, Yemen, for his child, Plaintiff Halimah Mohamed Mahmood Muthana (a/k/a Halimah Yousef Saleh Muthana).² (*Id.* ¶¶ 10, 54, 81, 85; Ex. N (Halimah's Petition), Dkt. No. 12-1). Mohamed and Halimah also attended an interview at the Sana'a Embassy. (*Id.* ¶ 89). On the same day the petition was filed, the Sana'a Embassy issued a letter, stating that Halimah's petition had been returned to the Immigration and Naturalization Service (INS) for review. (*Id.* ¶ 92; Ex. R (2/11/2002 Letter), Dkt. No. 12-2). The letter also instructed that any further inquiries should be directed to the United States Citizenship and Immigration Services (USCIS) office at the U.S. Embassy in Greece, although it is unclear whether that instruction applied to the entire letter or only to subparagraph (b), which was not circled. (*See id.* ¶ 93; Ex. R).

On March 25, 2002, Mohamed sent a letter to the Sana'a Embassy regarding the status of the petition, to which he received no response. (*Id.* ¶¶ 94-95; Ex. S, Dkt. No. 12-2). Thereafter, "Plaintiffs made numerous good faith attempts[, from 2002 through 2019,] to follow up on the status of Halimah's petition . . . to no avail." (*Id.* ¶¶ 14, 94-97). Among other things, Mohamed alleges he "kept trying to follow up" with the Embassy and USCIS; monitored and checked his mail religiously (and had relative check it too); "kept trying to check on the case but . . . kept getting turned around"; "call[ed] USCIS and they would say they do not have the case and they do not know" (same for the Embassy); searched online to check the status to no avail; and obtained a

---

² In some of Plaintiffs' filings the spelling of this Plaintiff's first name is "Halimah". (*See, e.g.,* FAC; FAC, Ex. E (Halimah's Birth Certificate), Ex. F (Halimah's Yemeni Passport), & Ex. K (Halimah's Declaration), Dkt. No. 12-1 (typed as "Halimah" but signed in ink as "Halema"); Pls.' Resp., Dkt. No. 18). However, her name is spelled differently in other filings. (*See, e.g.,* FAC, Ex. L (Money Transfers), Ex. U (7/30/20 Email), Dkt. No. 12-2 (spelling as "Halema"); Defs.' Mot. at 10 n. 3, Dkt. No. 13-1 & Defs.' Reply at 8, Dkt. No. 21 (spelling as "Halima"); Defs.' Mot. at 1 (spelling as "Halimeh")). Unless informed otherwise, the Court will accept the spelling of "Halimah" in the amended complaint and official documents attached thereto as the correct spelling.

[new] case number and interview. (*See id.* ¶¶ 23, 97, 113; Ex. I (Mohamed 2d Dec.) ¶¶ 17-27, Dkt. No. 12-1).

Ultimately, in 2019, Plaintiffs hired an attorney to determine the status of Halimah's petition. (*Id.* ¶ 100; Ex. I ¶ 28). Over the next two years, Plaintiffs' counsel submitted multiple requests to various government agencies regarding the status of the petition, none of which "could provide a straight answer[.]" (*Id.* ¶¶ 101-02). Two agencies responded to phone calls by stating that they had no records of Halimah's petition. (*Id.* ¶ 101; Ex. T (Atty. Office Declaration), Dkt. No. 12-2 at 37-38)). Eventually, on September 18, 2021, USCIS responded to Plaintiffs' FOIA request with, among other documents, copies of (1) a September 26, 2002 Notice of Intent to Deny (NOID) giving Mohamed 90 days to submit DNA tests to establish the claimed relationship with Halimah, and (2) a January 16, 2003 letter denying Halimah's petition for failure to produce countervailing evidence to overcome the agency's intention of denial. (*See Id.* ¶¶ 15-17 Ex. O (9/26/2002 letter) ("If you fail to submit such [DNA] evidence to [INS] the petitions will be denied."), Ex. P (01/16/2003 letter), & Ex. AA (FOIA response), Dkt. No. 12-2).

Critically, the NOID and denial letter were incorrectly addressed to "Mahmood Mohamed Muthana" at "4737 N. Kildare Ave., Chicago, IL 60630" instead of "Mohamed Mahmood Muthana" at "4858 N. Kilbourn St., Chicago, IL 60630". (*Id.*; FAC ¶¶ 110-12). The first and middle names were transposed, and the addresses were completely different. Until USCIS responded to Plaintiffs' FOIA request, Plaintiffs had not received the NOID or denial letter. (FAC ¶¶ 24, 107, 109, 114). According to Mohamed, "Before when [he] had filed immigration papers for [his] other family members[, he] always got notices to [his] address at 4858 North Kilbourn Street, Chicago, IL 60630." (FAC, Ex. I ¶ 18). "[He] had this address for many[,] many

3

years and [he] never changed it." (*Id.*) "No one gets mail in Yemen, so [he] made sure to use [his] Chicago address." (*Id.*)

Based on these allegations, in April 2022, Plaintiffs commenced this action, seeking to reopen Halimah's immigration petition. (Compl., Dkt. No. 1). As amended, the complaint asserts two claims against Defendants, one for deprivation of procedural due process under the Fifth Amendment and the other for violation of the APA. Defendants filed a motion to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). (Defs.' 2d Mot. to Dismiss, Dkt. No. 13). The motion is fully briefed.

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal based on the opposing party's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In determining whether a complaint states a claim, courts must accept all non-conclusory factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Levy v. W. Coast Life Ins. Co.*, 44 F.4th 621, 626 (7th Cir. 2022). Applying these principles, a complaint will survive a motion to dismiss if it "states a plausible claim for relief." *Ashcroft*, 556 U.S. at 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To state a plausible claim for relief, a complaint must "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679. The movant has the ultimate burden to show that dismissal is proper. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

Although "a complaint need not anticipate and overcome affirmative defenses, such as the statute of limitations . . . [,] dismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness." *Cancer Found., Inc. v. Cerberus*

4

*Cap. Mgmt., LP*, 559 F.3d 671, 674-75 (7th Cir. 2009). But if the complaint does not allege facts that create an ironclad statute of limitations argument for a defendant, the defense must await factual development. *Foss v. Bear, Stearns & Co.*, 394 F.3d 540, 542 (7th Cir. 2005).

## DISCUSSION

Defendants move to dismiss Plaintiffs' amended complaint on two grounds. First, Defendants assert that Plaintiffs' claims are barred by the general statute of limitations for civil actions against the federal government. Second, Defendants argue that Plaintiffs' due process claim fails because the filing of a petition for an alien relative does not create a protected liberty or property interest, and, even if it does, the allegations do not show that Defendants failed to provide due process. The Court will address each issue in turn.

I. **Statute of Limitations**

Subject to certain exceptions that are inapplicable here, "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a). The 6-year statute of limitations applies to a wide variety of civil actions against the United States, including claims brought under the APA, *Macklin v. United States*, 300 F.3d 814, 821 (7th Cir. 2002), and the Constitution, *Jackson v. United States*, 427 F. App'x 524, 526 (7th Cir. 2011). For challenges to federal agency actions, the accrual date for purposes of the statute of limitations is the date of the final agency action. *Vill. of Thornton v. U.S. Army Corps of Eng'rs*, 31 F. Supp. 2d 1060, 1063 (N.D. Ill. 1998); *Bienias v. Donley*, No. 12 C 6226, 2014 WL 4922010, at *3 (N.D. Ill. Sept. 30, 2014). In certain circumstances, however, the accrual date may be delayed or the limitations period may be tolled.

### A. Discovery Rule

"According to the 'discovery rule,' which applies to § 2401(a), a claim does not accrue until a plaintiff discovers or should have discovered that he has been injured." *Pagotelis v. U.S. Dep't of Homeland Sec.*, No. 17 C 5065, 2018 WL 11476520, at *2 (N.D. Ill. Apr. 10, 2018) (citing *Tzirides v. U.S. Dep't of Homeland Sec.*, No. 11 C 6572, 2013 WL 1286675, at *4 (N.D. Ill. Mar. 27, 2013); *see also Arroyo v. United States,* 656 F.3d 663, 673 (7th Cir. 2011); *Clark v. City of Braidwood,* 318 F.3d 764, 767 (7th Cir. 2003); *Washington v. Summerville,* 127 F.3d 552, 556 (7th Cir. 1997); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 45 (7th Cir. 1990). In cases where a decision is the cause of the underlying injury, the limitations period generally starts when the plaintiff receives notice of the decision. *See Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (noting that the limitations period commenced at the time a tenure decision was made and communicated to the plaintiff); *Cada*, 920 F.2d at 450 (stating that the statute of limitations did not begin to run until the plaintiff discovered that a decision to terminate him has been made); *Pagotelis*, 2018 WL 11476520, at *2 (holding that the statute of limitations began to run when the plaintiff first received notice that an application to replace a naturalization document had been denied); *Tzirides*, 2013 WL 1286675, at *4 (same). In cases challenging a government agency's action, the accrual date is usually the date of the "final agency action." *Bienias v. Donley*, No. 12 C 6226, 2014 WL 4922010, at *3 (N.D. Ill. Sept. 30, 2014) ("Under the APA, a right of action accrues at the "final agency action.") (citing 5 U.S.C. § 704).

Relying on the discovery rule, Plaintiffs contend that the statute of limitations did not begin to run until September 18, 2021, when they first learned of the NOID and denial letter through the government's response to their FOIA request. In support of their position, Plaintiffs cite *Barnhart v. United States*, 884 F.2d 295 (7th Cir. 1989), *United States v. Duke*, 229 F.3d 627 (7th Cir. 2000)

6

*superseded by statute on other grounds*, *United States v. Sims*, 376 F.3d 705 (7th Cir. 2004); and *Bruette v. Jewell*, 638 F. App'x 528 (7th Cir. 2016). Defendants counter that those cases are distinguishable and instead direct the Court's attention to *Hire Order Ltd. v. Marianos*, 698 F.3d 168 (4th Cir. 2012), to support their argument that Plaintiffs' proposed application of the discovery rule "would render the limitations period meaningless" and "useless because it would restart whenever anyone, anywhere became interested in or affected by a government policy regardless of how long it has been in place." (Defs.' MTD at 9, Dkt. No. 13-1). While none of the cases cited by either party are directly applicable to the facts in this case, they are somewhat instructive on the basic application of the discovery rule.

In *Barnhart,* the Seventh Circuit recognized the general principle that "[t]he 'discovery' rule decrees that a cause of action . . . begins to accrue when a plaintiff discovers or should have discovered the cause of his or her injury." 884 F.2d at 298. The issue in *Barnhart*, however, was whether the nature of the plaintiff's claim delayed his discovery of the injury. *Id.* at 299. Because the plaintiff had filed a separate suit based on the same injury at an earlier time, the court held that "the injury clearly did not prevent him from discovering and understanding the cause of that injury." *Id.* Thus, the plaintiff's claim against the government under the Federal Tort Claims Act was dismissed as untimely for having been filed after the applicable limitations period had run. *Id.* Beyond that general statement of the law, the *Barnhart* analysis is not pertinent to the issues raised in Defendants' motion.

In *Duke*, the plaintiff argued that his claim to undo the forfeiture of his property was timely because he had not been given proper notice of the forfeiture. 229 F.3d at 629. The Seventh Circuit focused its analysis on whether the plaintiff *should have* discovered his claim, despite not having received notice. *Id.* In that regard, the court recognized that "the category of injuries of

7

which people culpably are unaware is small[,]" but ultimately ruled that "[t]his, however, turns out to be the unusual, though not unprecedented, case in which the plaintiff was culpable for failing to discover that he had been injured." *Id.* at 630. There, the government had seized the plaintiff's property as the proceeds and instrumentalities of a crime for which he was later convicted. *Id.* As a result, the court found that the plaintiff could have hardly expected that the property would be returned and that there was ample evidence that he knew that the government meant to keep the property. *Id.* Addressing the policy underlying its decision, the Seventh Circuit explained, "[t]o know you've been injured and make no effort to find out by whom is laxity that must be penalized in order to secure the objectives of statutes of limitations." *Id.*

Although *Duke* involved different claims than those asserted in this case, the rules and analysis set forth in the decision are certainly informative. Like the plaintiff in *Duke*, Plaintiffs here argue that the government's failure to provide proper notice of its action should result in a delay of the beginning of the statute of limitations period, while Defendants argue that Plaintiffs *should have* discovered their claim much earlier. However, there are two key distinctions between *Duke* and the present case. First, in *Duke*, there was evidence of events that put the plaintiff on notice of the government's action, while nothing like that appears to have happened here. Second, Plaintiffs here allege that they diligently pursued their claim during the intervening time period. Taking those allegations as true, they suggest that Plaintiffs made sufficient efforts to find out what happened to Halimah's petition and, through no fault of their own, were unable to find answers.

In the last of the cases relied on by Plaintiffs, *Bruette v. Jewell*, the Seventh Circuit ultimately dismissed the appeal on procedural grounds. 638 F. App'x at 529. But first, the court noted that the plaintiff's claim might have been untimely under 28 U.S.C. § 2401(a) because the plaintiff waited more than a decade to file suit after beginning an administrative effort against the

8

government. *Id.* As such, that case is of very limited value because the court's decision was nonprecedential, did not rest on the statute of limitations, and contains no real analysis of the issue.

The cases Defendants cite in opposition to Plaintiffs' proposed application of the discovery rule also have limited relevance. *Hire Order Ltd. v. Marianos*, a Fourth Circuit nonbinding opinion, is informative only in so far as it recites the general rules governing the application of the discovery rule. 698 F.3d 168. There, two federally licensed gun dealers sought in 2008 to challenge an agency ruling published in 1969. *Id.* at 169. The court acknowledged the general principle that the limitations period began to run at the time of final agency action and held that the limitations period for facial challenges to an agency regulation begins to run when the agency publishes the regulation. *Id.* at 170. Because *Hire Order* did not involve the government's purported failure to provide proper notice of an agency action, it is not analogous to this case.

Similarly, *Sierra Club v. Slater*, a Sixth Circuit nonbinding opinion, acknowledged the general rule that APA claims accrue at the time of final agency action in the context of environmental impact statements under federal environmental protection laws. 120 F.3d 623, 630 (6th Cir. 1997). But that case involved the effect of an agency's decision not to issue a supplemental statement, rather than a purported failure to provide proper notice of final agency action. *Id.* Because neither *Hire Order* nor *Sierra Club i*nvolved Plaintiffs who did not receive proper notice of the agency action, those cases are not helpful to the Court's analysis here.

Finally, in the other primary case relied on by Defendants, *Fries v. Chicago v. Nw. Transp. Co.*, the Seventh Circuit discussed a plaintiff's duty of diligence and when a plaintiff "should know" that an injury exists. 909 F.2d 1092, 1094 (7th Cir. 1990). In this regard, Defendants argue that the denial of an immigration petition such as Plaintiffs' is not "inherently unknowable" but is instead discoverable with the exercise of reasonable diligence. Although the Court generally

9

agrees with Defendants' assessment of the nature of the denial of Plaintiffs' petition, that does not mean that a plaintiff who exercises reasonable diligence but still fails to discover an injury is without recourse. Indeed, a plaintiff who exercises reasonable diligence but is unable to discover the injury arguably falls squarely within the category of claimants for whom the accrual date should be delayed by operation of the discovery rule.

Based on the above, the Court finds no reason to conclude that the discovery rule should not generally apply to Plaintiffs' claims. Plaintiffs are correct that courts have applied the discovery rule to a wide variety of claims, including claims subject to the 6-year statute of limitation under 28 U.S.C. § 2401(a), and Defendants have not provided any controlling authority to the contrary. The issue, then, is whether Plaintiffs' proposed application of the discovery rule in this case is correct. In other words, the Court must determine whether the allegations in the FAC are sufficient to support their contention that Plaintiffs did not discover or should not have discovered their claims before September 18, 2021, when they allegedly first learned that Halimah's petition had been denied.

At this stage in the litigation, the Court is satisfied that Plaintiffs' amended complaint alleges facts that, when taken as true and viewed in the light most favorable to Plaintiffs, support their proposed application of the discovery rule. Specifically, Plaintiffs allege that they monitored and checked the mail religiously, followed up on the status of Halimah's petition multiple times and through various means over a 20-year period, and did not receive any response from the government that world have put them on notice that the petition had been denied. (*See* FAC ¶ 14 (Mohamed made numerous good faith attempts to follow up on the status of the petition, to no avail); ¶ 23 (Mohamed diligently monitored the mail); ¶¶ 94-95 (Mohamed sent a letter to the

10

Sana'a Embassy and received no response);[3] ¶ 96 (Plaintiffs made very attempt to follow up as to the status of the petition, to no avail); ¶ 100 (Plaintiffs hired an attorney to investigate); ¶ 101-02 (various government agencies were able to provide a straight answers to the inquires of Plaintiffs' counsel); ¶ 113 (Plaintiffs continuously and diligently monitored mail at all relevant times)). These allegations do not tell the story of petitioners who knew they had "been injured and [made] no effort to find out by whom" or "postpone[d] the running of the statute of limitations by willfully closing [their] eyes, ostrich-like, to a known probability that [they had] been injured, even if [they were] not certain." *Duke*, 229 F.3d 630. Rather, Plaintiffs plausibly allege that since 2002, they had been actively seeking information about the status of Halimah's petition but were stonewalled through no fault of their own.

Because Plaintiffs have alleged sufficient facts to support their theory that their claims did not accrue until September 18, 2021, Defendants' motion to dismiss the action as untimely under the statute of limitations is denied. However, since this decision rests upon the lens through which a Rule 12(b)(6) motion challenging the sufficiency of complaint allegations must be viewed, Defendants are not precluded from raising the statute of limitations as an affirmative defense.

### B. Equitable Tolling

Even if the allegations in the FAC were not enough to support Plaintiffs' application of the discovery rule here, the Court finds that they likely would be sufficient to establish grounds for equitably tolling the limitations period. Under the doctrine of equitable tolling, the running of the statute of limitations is suspended for such time as is reasonably necessary for a plaintiff to obtain essential information bearing on the existence of the claim. *Cada*, 920 F.2d at 451. The doctrine

---

[3] To the extent that Defendants argue that Plaintiffs' communication efforts were sent to the incorrect Embassy, (*see* Defs.' Reply at 4, Dkt. No. 21), the Court rejects that contention because the letter providing the address of the Athens Embassy is not clear, as discussed *supra* at p. 2.

applies "when the plaintiff, exercising due diligence, was unable to discover evidence vital to a claim until after the statute of limitations expired." *Sidney Hillman Health Ctr. of Rochester v. Abbott Lab'ys, Inc.*, 782 F.3d 922, 931 (7th Cir. 2015) (quoting *Moultrie v. Penn Aluminum Int'l, LLC,* 766 F.3d 747, 752 (7th Cir. 2014)). "Generally, the plaintiff bears the burden to establish that (1) she "diligently" pursued her claim; and (2) "some extraordinary circumstances" prevented her from timely filing her complaint." *Blanche v. United States*, 811 F.3d 953, 962 (7th Cir. 2016). Such relief "is granted sparingly only when extraordinary circumstances far beyond the litigant's control prevented timely filing." *Simms v. Acevedo,* 595 F.3d 774, 781 (7th Cir. 2010) (quoting *Wilson v. Battles,* 302 F.3d 745, 749 (7th Cir. 2002)). To invoke equitable tolling, a plaintiff "must bring suit within a reasonable time after he has obtained, or by due diligence could have obtained, the necessary information." *Cada,* 920 F.2d at 451. Thus, in deciding whether a statute of limitations should be equitably tolled, "the district court must determine that the petitioner has pursued his rights diligently and extraordinary circumstances beyond his control stood in the way of the timely filing of his petition. *Simms*, 595 F.3d at 781 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

      According to Defendants, the equitable tolling doctrine is not appropriate here because the agency provided proper notice of the decision, and, in any event, Plaintiffs fail to allege the requisite diligence on their part. To support the proper notice argument, Defendants rely on *Macklin*, in which the plaintiff failed to establish a case for equitable tolling because the plaintiff had received a letter from the government with information sufficient to trigger the running of the limitations period. 300 F.3d at 823. Notably, in that case, there does not appear to have been any dispute that the government sent and the plaintiff received the letter regarding its action. *Id.*

*Macklin* is therefore not analogous to this case, where Plaintiffs contend that the agency failed to provide them with proper notice.

With respect to diligence, Defendants claim that "Plaintiffs' allegations do not evidence any sort of diligence on their part—let alone "all due diligence," [citation omitted]—to determine the outcome of the I-130 Petition." (Defs.' Reply at 4, Dkt. No. 21 (quoting *Smith v. City of Chicago Heights*, 951 F.2d 834, 839 (7th Cir. 1992)). The Court disagrees. As detailed above in connection with the Court's analysis of the discovery rule, Plaintiffs sufficiently detail their unsuccessful efforts to ascertain the status of Halimah's petition. Again, when these allegations are taken as true and viewed in the light most favorable to Plaintiffs (as they must be on a Rule 12(b)(6) motion), they are sufficient to support equitable tolling of the limitations period here. As with the discovery rule, however, the evidence may eventually show that the period should not be tolled due to lack of diligence or for another reason. But at this stage in the litigation, the allegations are sufficient to survive Defendants' motion to dismiss.

## II. Procedural Due Process

The Fifth Amendment provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To state a procedural due process claim, a plaintiff must sufficiently allege that (1) the existence of a liberty or property interest of which the plaintiff has been deprived and (2) the procedures followed by the government were insufficient. *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577-78 (1972); *Perry v. Sindermann*, 408 U.S. 593, 601 (1972); *Bradley v. Vill. of Univ. Park, Illinois*, 929 F.3d 875, 882 (7th Cir. 2019) ("The basic legal questions presented by due process cases like this are familiar: "(1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?'")

13

(quoting *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017)); *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009). Defendants argue that Plaintiffs' complaint must be dismissed because the filing of a petition for an alien relative does not create a protected interest, and, even if it does, Plaintiffs' allegations do not show that Defendants failed to provide due process. In addition, Defendants maintain that Plaintiffs' alleged inquiries over the 20 years following the initial filing of Halimah's petition did not trigger any duty to act on its part.

### A. Existence of Protected Interest

One source of a protected property interest is a statutorily conferred nondiscretionary government benefit. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756 (2005); *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Goldberg v. Kelly*, 397 U.S. 254, 262 (1970); *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011) ("To have a liberty or property interest in some benefit, a person must have a legitimate claim of entitlement, which means an entitlement established by rule; hope for a favorable exercise of administrative discretion does not qualify."). Conversely, no property interests exist if a benefit is discretionary in nature. *Mendoza-Solis v. Sessions*, 701 F. App'x 498, 501 (7th Cir. 2017) (finding that the plaintiff did not have a liberty or property interest in discretionary relief such as cancellation of removal, so he was not entitled to constitutional due process); *Delgado v. Holder*, 674 F.3d 759, 765 (7th Cir. 2012) (stating that an alien eligible for discretionary relief lacks a substantive entitlement, and, therefore, no liberty interest is at stake).

Under the statute governing I-130 petitions, "the Attorney General *shall*, if he determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative . . . , approve the petition[.]" 8 U.S.C. § 1154(b) (emphasis added). Courts

considering this language have concluded that the "protections of the Due Process Clause apply because granting an I-130 petition is nondiscretionary when the petitioner meets the statutory standard." *Bodo v. Mayorkas*, No. 17-CV-09254, 2023 WL 5334606, at *8 (N.D. Ill. Aug. 18, 2023) (Pacold, J.); *Ching v. Mayorkas*, 725 F.3d 1149, 1155 (9th Cir. 2013) (The decision of whether to approve an I-130 visa petition is a nondiscretionary one because "determinations that 'require application of law to factual determinations' are nondiscretionary.") (quoting *Hernandez v. Ashcroft*, 345 F.3d 824, 833-34 (9th Cir. 2003) (internal alteration omitted)); *Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 808 (9th Cir. 2020). Although one court has commented that "it remains unresolved whether a person has a liberty interest in residing with his or her alien spouse in the United States such that deprivation of that liberty entitles that person to due process protections[,]" *Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663, 681 (E.D. Va. 2019), *aff'd*, 836 F. App'x 131 (4th Cir. 2020), that case did not consider whether the filing of an I-130 petition gives rise to a property interest derived from a statutorily conferred non-discretionary government benefit.

Because the plain language of the statute makes clear that the adjudication of an I-130 petition is nondiscretionary if facts showing eligibility are established, the Court agrees with Plaintiffs that the filing of Halimah's petition gave rise to a property interest protected by the Due Process Clause. Although Defendants argue that no such interest exists, they cite only to *Owusu-Boakye*, which did not involve the same question, and, in any event, is neither binding nor persuasive. Accordingly, the Court finds that Plaintiffs' complaint plausibly alleges the existence of a constitutionally protected interest.

B. **Insufficient Due Process**

Turning to the second part of the analysis, the Court must determine whether Plaintiffs have adequately alleged that Defendants did not provide sufficient due process. Generally, "due process requires notice reasonably calculated to provide actual notice of the proceedings and a meaningful opportunity to be heard." *Nazarova v. I.N.S.*, 171 F.3d 478, 482 (7th Cir. 1999). Notice is "constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent." *Jones v. Flowers*, 547 U.S. 220, 226 (2006). In immigration proceedings, "due process does not require that the alien 'actually receive' notice of removal proceedings, but only that the government attempt to deliver notice to the last address provided by the alien." *Patel v. Holder*, 563 F.3d 565, 568 (7th Cir. 2009) (quoting *Joshi v. Ashcroft,* 389 F.3d 732, 735 (7th Cir. 2004)); 8 C.F.R. § 103.8(a)(1)(i) ("Routine service consists of mailing the notice by ordinary mail addressed to the affected party and his or her attorney or representative of record at his or her last known address."). In this context, if a clerical error has no substantive effect on a proceeding, there is no due process violation. *Miller v. Rosado*, 2017 WL 3333961, at *14 (N.D. Ind. Aug. 4, 2017).

Defendants rely primarily on *Patel* and *Miller* to argue that the notice provided in this case satisfies due process requirements. In this regard, Defendants argue that Plaintiffs' claim fails because the amended complaint never specifically alleges that the Kildare address was not the last address provided to the INS. Defendants then write off the address discrepancy as a mere clerical error that did not result in any deprivation of due process, especially because the documents contained the proper case number and showed Halimah as the beneficiary. Plaintiffs counter, arguing that their pleading adequately alleges that the Kilbourn address was the last address provided by Mohamed to the government. (Pls.' Resp. at 16, Dkt. No. 18; FAC ¶ 21; FAC, Ex. I

16

(stating that Mohamed had previously used the Kilbourn address on his immigration papers and never changed it). In addition, Plaintiffs maintain that the wrong name should not be disregarded as a clerical error, because it shows that the notice was sent to the wrong person—a different person.

Finally, the parties dispute the effect of *Jones v. Flowers* on this case. In the FAC, Plaintiffs appear to argue that the case imposed a duty on the government to ensure proper notice was provided in response to Plaintiffs' subsequent inquiries regarding the status of Halimah's petition. Defendants disagree, downplaying and distinguishing the case because there the government knew that inadequate notice had been provided before a final decision was made. In their response, Plaintiffs appear to slightly back off their original position, stating that they cited *Jones v. Flowers* for the broader proposition that notice must be "reasonably calculated to reach the intended recipient when sent." 547 U.S. at 220. Plaintiffs insist that notice in that case was insufficient under that general rule.

Taking Plaintiffs' allegations about their use of the Kilbourn address as true, viewing all the relevant allegations in the light most favorable to Plaintiffs, and drawing reasonable inferences in Plaintiffs' favor, the Court is satisfied that the FAC plausibly alleges that the notice provided here did not satisfy due process requirements. Based on Plaintiffs' allegation that they used the Kilbourn address for all immigration matters, it is reasonable to infer that Plaintiffs allege the Kilbourn address to be the last address provided to the government. Again, at this stage in the litigation, such allegations are sufficient to defeat Defendants' argument that Plaintiffs did not specifically allege that the Kilbourn address was the last one provided. That level of specificity is not required when the only reasonable conclusion that can be drawn from the allegations of the

pleading is that the last mailing address provided by Plaintiffs to Defendants was the Kilbourn address.[4]

As to the transposed first and middle names, the Court agrees that the error was likely clerical in nature and would not have had a substantive effect on the proceedings *if the letters had been sent to the correct address*. Although the name error likely would not be enough to support the claim by itself, those allegations may still be relevant to the overarching question of Defendants' failure to provide adequate notice. Because the Court has determined that the allegations concerning notice are sufficient to state a claim, there is no need to reach the issue of whether *Jones v. Flowers* imposed any duty on Defendants to act in response to Plaintiffs' post-petition inquiries.

## CONCLUSION

For the reasons stated above, Defendants' second motion to dismiss [13] is denied. Defendants are ordered to file an answer to Plaintiffs' amended complaint by December 28, 2023.

**DATED**: November 30, 2023          **ENTERED**:

_LaShonda A. Hunt_
LaShonda A. Hunt
United States District Judge

---

[4] Notably, Defendants do not point to any immigration documents filed by Plaintiffs that listed the Kildare address.